1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10  BRADLEY D. SMITH,

11          Plaintiff,                    No. CIV S-06-2373 DAD

12      v.

13  MICHAEL J. ASTRUE,                    ORDER
    Commissioner of Social Security,
14
            Defendant.
15  _____/

16          This social security action was submitted to the court, without oral argument, for

17  ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18  judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's cross-

19  motion is denied, the decision of the Commissioner of Social Security (Commissioner) is

20  reversed, and this matter is remanded with the direction to grant benefits.

21                          **PROCEDURAL BACKGROUND**

22          Plaintiff Bradley D. Smith initially applied for Social Security Disability

23  Insurance benefits under Title II of the Social Security Act (Act) on January 31, 2002.  A closed

24  period of disability from December 15, 1999 to August 31, 2002, was granted.  Plaintiff

25  requested a hearing on the partially favorable decision, and an Administrative Law Judge (ALJ)

26  determined that plaintiff was disabled from December 15, 1999 through August 31, 2002, but

1

could perform a range of light work on and after September 1, 2002.  The Appeals Council denied review.  The undersigned affirmed the Commissioner's decision in case No. CIV S-05-1226 DAD on March 9, 2007.  (Transcript (Tr.) at 32; Pl.'s Mem. in Supp. of Mot. for Summ. J. at 3.)

On July 2, 2003, plaintiff filed a new application for benefits under Title II of the Act.  (Tr. at 85-87.)  The new application was based on a different time period and alleged new injuries.  (Pl.'s Mem. at 4.)  The application was denied initially on August 29, 2003 and upon reconsideration on February 18, 2004.  (Tr. at 43-53.)  Pursuant to plaintiff's request, a hearing was held before an ALJ on January 5, 2006.  (Tr. at 58-65, 282-333.)  Plaintiff was represented by counsel and testified at the hearing.  (Tr. at 289-322.)  A vocational expert also testified.  (Tr. at 322-332.)  On February 9, 2006, the ALJ determined that plaintiff was  not disabled.  (Tr. at 12-20.)  The ALJ entered the following findings:

1. Claimant filed an application for a period of disability and disability insurance benefits on July 2, 2003, alleging disability from November 1, 2002.  In a brief dated December 19, 2005, claimant, through his attorney, amended his alleged disability onset date to June 1, 2003.

2. Claimant met the disability insured status requirements of the Act on June 1, 2003, his amended alleged onset date, and continues to meet those requirements through December 31, 2007.

3. Claimant has not performed SGA [substantial gainful activity] since June 1, 2003.

4. The medical evidence establishes that claimant has the severe impairments of multilevel degenerative disc disease of the lumbar spine, status post fusion surgery at L4-5 and L5-S1, and bilateral osteoarthritis of the hips, worse on the right than the left, status post right total hip replacement.

5. Claimant's severe impairments do not meet or equal any listed impairment of Appendix 1, Subpart P of Social Security Administration Regulation No. 4.

6. Claimant has an RFC [residual functional capacity] for a range of work at the sedentary exertional level with a sit-

| | | |
|---|---|---|
| 1 | | stand option every 30 to 45 minutes. Non-exertionally, claimant is limited to tasks not requiring a constant high |
| 2 | | level of concentration. |
| 3 | 7. | Claimant's subjective complaints are not fully credible. |
| 4 | 8. | Claimant is presently a 49-year-old individual with three years of college education and vocationally relevant past work experience |
| 5 | | as a branch bank manager, bank customer service representative, bank supervisor and bank teller during the past 15 relevant years. |
| 6 | | |
| 7 | 9. | Considering the above RFC, claimant cannot perform any of his past relevant work. |
| 8 | 10. | Considering the above RFC and vocational characteristics, the vocational expert identified other jobs that exist in significant |
| 9 | | numbers in this and other regions of the United States that claimant can perform. Cited jobs include new account interviewer, |
| 10 | | statements clerk and credit clerk. |
| 11 | 11. | Pursuant to 20 C.F.R. § 404.1520(f), claimant is not and has not been under a "disability" as that term is defined in the Social Security Act, as |
| 12 | | amended, at any time through the date of this decision. |

(Tr. at 19.)

On August 25, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 4-11.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 26, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. <u>Schneider v. Comm'r of the Soc. Sec. Admin.</u>, 223 F.3d 968, 973 (9th Cir. 2000); <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. <u>See</u> <u>Miller v. Heckler</u>, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Morgan</u>, 169 F.3d at 599; <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).

1    A reviewing court must consider the record as a whole, weighing both the

2 evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

3 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

4 of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

5 substantial evidence supports the administrative findings, or if there is conflicting evidence

6 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

7 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

8 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

9 1335, 1338 (9th Cir. 1988).

10    In determining whether or not a claimant is disabled, the ALJ should apply the

11 five-step sequential evaluation process established under Title 20 of the Code of Federal

12 Regulations, §§ 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

13 This five-step process can be summarized as follows:

14    Step one:  Is the claimant engaging in substantial gainful activity?
       If so, the claimant is found not disabled.  If not, proceed to step
15    two.

16    Step two:  Does the claimant have a "severe" impairment?  If so,
       proceed to step three.  If not, then a finding of not disabled is
17    appropriate.

18    Step three:  Does the claimant's impairment or combination of
       impairments meet or equal an impairment listed in 20 C.F.R., Pt.
19    404, Subpt. P, App. 1?  If so, the claimant is automatically
       determined disabled.  If not, proceed to step four.
20
       Step four:  Is the claimant capable of performing his past work?  If
21    so, the claimant is not disabled.  If not, proceed to step five.

22    Step five:  Does the claimant have the residual functional capacity
       to perform any other work?  If so, the claimant is not disabled.  If
23    not, the claimant is disabled.

24 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25    The claimant bears the burden of proof in the first four steps of the sequential

26 evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

4

sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances six arguments in support of his motion:  (1) he cannot perform the exertional demands of full time work; (2) the ALJ failed to provide a function-by-function assessment of his RFC; (3) he did not knowingly fail to follow medical advice; (4) the ALJ failed to follow the regulations and case law when he evaluated the opinion of plaintiff's treating doctor; (5) the ALJ failed to address all of the non-exertional limitations that adversely impact plaintiff's ability to perform basic work functions; and (6) the ALJ did not include all of plaintiff's exertional and non-exertional limitations in the hypothetical questions posed to the vocational expert.

Plaintiff's first five arguments challenge the ALJ's step four findings regarding his residual functional capacity (RFC).  Plaintiff's final argument challenges the ALJ's step five determination that there are other jobs that exist in significant numbers in the United States that plaintiff can still perform.  The undersigned finds plaintiff's arguments regarding his RFC persuasive and addresses those arguments below.

**I.  Determination of RFC**

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).  When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record.  20 C.F.R. § 404.1546(c).  "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings.  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  It is the claimant who bears the burden of proof of establishing his or her RFC.  Yuckert, 482 U.S. at 146 n.5.

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding (1) the claimant's RFC, (2) the physical and mental demands of the claimant's former employment, and (3) whether the claimant's RFC permits him to return to previous occupations. Social Security Ruling (SSR) 82-62, 1982 WL 31386 (1982). See Cantone v. Apfel, No. CIV-99-2504-CRB, 2000 WL 145816, at *4 (N.D. Cal. 2000) (citing Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988)). Here, plaintiff does not dispute the findings regarding the demands of his past work and his inability to perform that work. Plaintiff contends that there is insufficient evidence to support the ALJ'S finding that he can still perform full time sedentary work as defined in 20 C.F.R. § 404.1567(a) and Social Security Ruling (SSR) 83-10.

## II. Medical Opinions

Plaintiff argues that, contrary to the ALJ's analysis, the opinions of his treating and examining doctors do not establish that he is able to perform the amount of sitting required for sedentary work or to meet the demands of full time work as it is described in SSR 96-8p and SSR 96-9p. The Commissioner responds that the ALJ's RFC determination is "a reasonable amalgamation of the medical source opinions and other credible evidence of record" and that the ALJ properly incorporated plaintiff's limitations into the RFC. (Def.'s Cross-Mot. for Summ. J. at 8.) In the Commissioner's view, the RFC is "essentially consistent with substantial portions of the various medical opinions and even Plaintiff's own reports." (Id.)

A Social Security claimant is disabled if he or she cannot work on a "regular and continuing" basis, which means eight hours a day, five days a week. 20 C.F.R. §§ 404.1512(a) & 404.1545(b); SSR 96-8p. The physical exertion requirements for sedentary work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001).

"'Occasionally' means occurring from very little up to one-third of the time."  SSR 83-10, 1983 WL 31251, at *5 (Nov. 30, 1982).  Thus, for purposes of sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting would generally total approximately 6 hours of an 8-hour workday."  Id.

"[A] person who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work."  Auckland, 257 F.3d at 1035 (citing SSR 83-12).  However, such a limitation does not necessitate a finding of disability in every case.  Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986) (affirming the determination that the claimant, who needed to alternate sitting and standing, was not disabled where there existed 3,750 to 4,250 jobs in the greater metropolitan area which the claimant could perform with his limitation).  If the claimant is capable of transferring his work skills to jobs in which a person can sit or stand with a degree of choice, the claimant will not be found disabled.  Auckland, 257 F.3d at 1036.  In circumstances where a claimant is unable to sit for prolonged periods, the services of a vocational expert are required in order to determine whether there are jobs that exist in significant numbers in the national economy that would permit the claimant to sit or stand with the requisite degree of choice.  Id. at 1035 (citing SSR 83-12); Martinez, 807 F.2d at 774.

In determining a claimant's RFC, it is well established that the weight to be given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester, 81 F.3d at 830.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Id.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).  However, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different, independent clinical findings, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or examining professional. Lester, 81 F.3d at 831.

In the present case, the ALJ found that plaintiff's back and hip impairments preclude him from heavy lifting and from sitting for prolonged periods of time without a change of position. (Tr. at 16.) The ALJ determined that plaintiff "has an RFC for a range of work at the sedentary exertional level with the need for a sit-stand option every 30 to 45 minutes" and "is limited to tasks not requiring a constant high level of concentration." (Id.) The ALJ believed that "[t]his RFC is consistent with the medical evidence, most specifically the August 2005 opinion of orthopedic surgeon Howard Sturtz, M.D." (Id.)

In support of his RFC findings, the ALJ cited five medical opinions, which he described as follows: (1) the October 25, 2002 opinion of treating orthopedic surgeon Josef Gorek, M.D., indicating that plaintiff "had no post-surgical objective preclusion from some level of work activity although, subjectively, he continued to complain of chronic back pain"; (2) the October 25, 2002 letter of treating physician Irwin Barr, M.D., in which he indicated that plaintiff's "level of pain had 'diminished by a significant degree' post-surgically although he still required significant amounts of pain medication" and that plaintiff "could not sit for more [than] 30 to 45 minutes without changing positions, preferably lying down for some period of time, and

8

would not be a good candidate for returning to his past work"; (3) the August 2003 opinion of internal medicine consultative examiner Jaskaran Momi, M.D., that plaintiff "could perform a range of work at the sedentary exertional level with the need for frequent rest"; (4) the February 2004 opinion of a non-examining agency physician[1] that plaintiff "had a residual functional capacity for a range of work at the sedentary exertional level"; and (5) the August 29, 2005 opinion of consultative examiner Dr. Sturtz that plaintiff "had an RFC for a range of work at the sedentary to light exertional level with the need to change positions intermittently." (Tr. at 16-17.)

The ALJ gave little weight to Dr. Barr's opinion in September 2004 that plaintiff's degenerative disk disease of the lumbar spine precluded even a limited range of work at the sedentary exertional level due to plaintiff's need for unscheduled breaks every 20 to 30 minutes and his need to miss work three or more times per month. (Tr. at 17.) The ALJ gave four reasons for rejecting Dr. Barr's September 2004 opinion: (1) the opinion was inconsistent with medical records indicating a capacity to perform sedentary work with a sit-stand option; (2) the opinion was inconsistent with Dr. Barr's treatment records, Dr. Barr's opinion in October 2002, and a treatment note in February 2005 in which Dr. Barr indicated that plaintiff could walk up to one mile and sit for up to one hour at a time with the need to change position; (3) the opinion was "inordinately based upon claimant's subjective complaints that [the ALJ found] not fully credible"; and (4) the opinion reflected that Dr. Barr was "acting more as an advocate for claimant than as an objective treating doctor." (Id.)

The ALJ also gave little weight to an opinion described as the August 2003 opinion of a DDS medical advisor that plaintiff had an RFC for a range of work at the light

---

[1] The ALJ cites Exhibit B4F as the agency physician's February 2004 opinion. In the record lodged with the court, Exhibit B4F is another agency physician's opinion dated August 28, 2003. (Tr. at 210-17.) The February 2004 opinion is marked Exhibit B5F. (Tr. at 218-25.) It appears that the August 2003 opinion is the one finding an RFC for a range of sedentary work with limitations.

exertional level.  (Tr. at 17) (citing Exhibit "5F" [tr. at 218-25])  The ALJ found that the agency physician "did not properly consider claimant's subjective complaints and the medical evidence supporting low back pain and bilateral hip pain consistent with a lesser residual functional capacity" and did not have the opportunity to consider later medical evidence indicating osteoarthritis of the bilateral hips and requiring a right total hip replacement in November 2003. (Id.)  However, the August 2003 agency physician's opinion appears in the record as Exhibit B4F and appears to indicate that plaintiff has an RFC for a range of work at the sedentary exertional level with a sit-stand option every 45 minutes.  (Tr. at 210-17.)  The February 2004 opinion by a different agency physician may be the opinion to which the ALJ intended to give little weight. (Tr. at 218-25 (marked Exhibit B5F).)

After examining the record, with particular attention to the opinions relied upon by the ALJ, the undersigned finds that (1) the ALJ did not consider all aspects of the opinions of the treating and examining physicians, (2) the ALJ based his RFC findings on selected portions of the opinions taken out of context, and (3) the ALJ improperly rejected the 2004 opinion of treating physician Dr. Barr.  The opinions of the treating and examining physicians do not provide substantial evidence that plaintiff has an RFC that permits him to perform a range of work at the sedentary exertional level if he has a sit-stand option every 30 to 45 minutes and is limited to tasks not requiring a constant high level of concentration.  The undersigned addresses each of the cited medical opinions in turn.

In his orthopedic spine consultation report dated October 25, 2002, Dr. Gorek did indeed use the words "no objective basis for persistent disability," but he used the phrase in the following context:

> I would like to clarify the record as apparently there is some misunderstanding.  Although I had suggested that Mr. Smith is able to work up to 8 hours a day, when I evaluated him last July, I made that comment with some qualification.

> Mr. Smith may not be able to walk [sic] a full schedule.  The pain may preclude him being able to work.  From an objective

standpoint, i.e. from his outward appearance from the way the x-rays look, there is no objective basis for persistent disability. The pain however is a subjective issue and only the patients truly knows how much pain they are being subject to and whether or not that pain precludes them from day to day activities including work activities.

By Mr. Smith's report, he is still limited by pain. We need to take that into consideration. I am not in a position to make a formal assessment regarding his ability to work. To define his work capacity, I strongly suggest that he have a functional assessment done in a more formal dedicated setting. I review Mr. Smith solely from the standpoint of whether or not he is a surgical candidate. I have no further surgical treatment in the near future for Mr. Smith.

I will see Mr. Smith back again on an as-needed basis. He does understand that he has a degree of disk degeneration at L3-L4 and that should this fail on a more catastrophic level, i.e. causing significant neurologic compression resulting in either radicular pain and/or nerve root dysfunction, that I think would be indication for surgery. I would not be inclined to operate solely for axial symptoms, i.e. dominant lumbago.

Again, please take all of this into consideration when making an assessment regarding his functional capacity. I will see Mr. Smith back as needed.

(Tr. at 140.) It is not an accurate reading of Dr. Gorek's report to describe it, as the ALJ did, as an opinion that plaintiff "had no post-surgical objective preclusion from some level of work activity although, subjectively, he continued to complain of chronic back pain." (Tr. at 16.) It was Dr. Gorek's opinion that plaintiff's reports of limitations caused by pain needed to be taken into consideration, that a functional assessment was needed, and that plaintiff may not be able to work a full schedule due to pain. Dr. Gorek did not state or even imply that plaintiff's complaints of pain were inconsistent with his medical condition or evidence of malingering.

In his October 25, 2002 opinion, Dr. Barr indicated, as stated by the ALJ, that plaintiff's level of pain had diminished by a significant degree post-surgically but still required significant amounts of pain medication and that plaintiff could not sit for more than 30 to 45 minutes without changing positions, preferably by lying down for some period of time. (Tr. at 16, 187.) Dr. Barr did not state, as asserted by the ALJ, that plaintiff "would not be a good

11

candidate for returning to his past work." (Tr. at 16.) Rather, Dr. Barr stated that he did not view

plaintiff "to be a good candidate <u>for a return to work</u>." (Tr. at 188 (emphasis added).) Dr. Barr

reported that during the years he had been treating plaintiff, plaintiff had consistent and severe

low-back pain that prevented him from working. (Tr. at 187.) Dr. Barr explained that epidural

steroid injections, acupuncture, and physical therapy all proved to be unsuccessful treatments and

pharmacologic approaches, including high doses of a muscle relaxant and pain medication, were

tried but did not relieve the pain that prevented plaintiff from participating in his usual daily

activities. Dr. Barr noted that plaintiff was on high doses of long acting pain medication on a

continuous basis until Dr. Gorek performed the spinal stabilization surgical procedure in

September 2001. (<u>Id.</u>) In the context of this discussion of failed treatments, Dr. Barr made the

statement about diminished pain after surgery and evaluated plaintiff's functional limitations.

> Since his surgery, his level of pain has diminished by a significant degree although he continues to require significant doses of pain medication on a daily basis. His overall pain requirements are quite a bit less and unfortunately his ability to function has not improved dramatically. He continues to be limited as far as the duration of time that he can stand, sit or walk. Realistically, he cannot sit for periods exceeding a half an hour to forty-five minutes without changing position and/or resting in a supine position for a period of time. He is very limited in terms of his ability to bend, kneel or twist. He cannot do any of these procedures easily at this time.

> It is my view that he would be unable to sit at a chair and work in any job that requires him to do so for more than an hour at a time without spending at least some time in a recumbent position to recover. I do not view him at this time to be a good candidate for a return to work. I have monitored his care over a three-year period of time and over that time I have seen him to be very consistent in his functioning behavior. I do not feel that he is, in anyway amplifying his symptoms, but in fact is trying his best to cope with his significant pain symptoms.

> In conclusion, I think that withdrawal of his disability and returning to a working environment would be a mistake and that he would be unable to consistently work in a gainful fashion due to ongoing pain and limited function.

(Tr. at 187-88.) The undersigned finds that the ALJ's finding of an RFC for a range of work at

the sedentary exertional level with a need for a sit-stand option every 30-45 minutes does not take into account Dr. Barr's opinion that plaintiff cannot sit for periods exceeding half an hour to forty-five minutes without changing position or lying down and cannot sit in a chair and work for more than an hour at a time without lying down for some period of time.[2]  The limitations found by Dr. Barr in 2002 would preclude plaintiff from working a full eight hour day.

On August 16, 2003, about ten months after Drs. Gorek and Barr wrote the two opinions described in the preceding paragraphs, Dr. Momi conducted a comprehensive internal medicine evaluation of plaintiff.  Although the ALJ ascribed to Dr. Momi an opinion that plaintiff "could perform a range of work at the sedentary exertional level with the need for frequent rest," Dr. Momi's opinion does not support such a conclusion.  Rather, Dr. Momi made the following functional assessment:

> This claimant has limitations on bending and stooping, long-term standing and walking, and carrying heavy weights.  He can probably sit for about 45 minutes to one hour at a time for a total of 4-6 hours during an eight-hour shift with frequent rests of 15 minutes to half an hour in between.  He can stand and walk a few steps only and occasionally carry less than 10 pounds of weight.  He is advised not to take a job requiring frequent bending, pushing, pulling, or carrying heavy weights.

(Tr. at 209.)  The ALJ's finding of an RFC for a range of work at the sedentary exertional level with the need for a sit-stand option every 30-45 minutes does not take into account Dr. Momi's opinion concerning plaintiff's ability to stand and walk "a few steps only" and his need to rest for 15 to 30 minutes after each 45 minutes to one hour of sitting.  With severe restrictions on his standing and walking, plaintiff's work day at best would consist of 6 hours of sitting, for no more than one hour at a time, with a 15-minute rest after each hour of sitting, for a total of

---

[2]  "Recumbent" means "[l]ying down, especially in a position of comfort; reclining."  at Stedman's Medical Dictionary 708 (1995).  "Rest" as a noun means "[c]essation of work, exertion, or activity," "[p]eace, ease, or refreshment resulting from sleep or the cessation of an activity," and "[s]leep or quiet relaxation."  Id. at 717.  As a verb, "rest" means "[t]o cease motion, work, or activity" and "[t]o lie down, especially to sleep."  Id.  "Supine" means "[l]ying on the back."  Id. at 805.

approximately one hour of resting and six hours of work.  The limitations found by Dr. Momi in 2003 would preclude plaintiff from working a full eight hour day five days a week.

Dr. Sturtz's opinion in 2005 does not indicate, as the ALJ asserts, that plaintiff "had an RFC for a range of work at the sedentary to light exertional level with the need to change positions intermittently."  (See tr at 16 (citing Exhibit B12F/10 [tr. at 279]).)  When Dr. Sturtz examined plaintiff on August 8, 2005, he noted plaintiff's history and his complaints that (a) his medication affects his ability to function, (2)  he has to lie down for an hour after he does any activity, and (3) if he is active one day, he has to rest the next.  (Tr. at 270-71.)  Dr. Sturtz reviewed plaintiff's medical file and discussed previous medical opinions and treatment records in detail.  (Tr. at 272-78.)  Dr. Sturtz expressly found that plaintiff "demonstrates findings that are consistent with his complaints," that his behavior was appropriate, and that nothing unusual or inconsistent was observed.  (Tr. at 279-80.)

Dr. Sturtz found that plaintiff had "a less than good result from his back surgery with painful and restricted range of motion" but commented that "such two-level fusions from an anterior and posterior approach frequently result in a lack of pain relief, even if the fusion is successful." (Tr. at 279.)  Dr. Sturtz found that plaintiff had an average result from his right hip surgery with a reasonably pain-free range of motion in that hip, while plaintiff's "left hip remains symptomatic with painful and restricted range of motion."  (Id.)  Regarding future treatment, it was Dr. Sturtz's opinion that plaintiff should have a left total hip replacement, which would probably increase his ability to stand and walk but would probably not affect his ability to sit or lift.  (Id.)  Dr. Sturtz believed that plaintiff had already recovered from his right hip surgery and therefore was not still suffering any transient impairment due to surgery.  (Tr. at 280.)

Dr. Sturtz opined as follows with respect to plaintiff's residual functional capacity:

> . . . I believe the patient would be limited regarding sitting for up to one hour at a time and then would require a change of position. Over an 8-hour day, I believe the patient could probably sit for two

14

to three hours intermittently.  Regarding standing, I believe he can
do so for 30 to 45 minutes at a time.  Over an 8-hour day, I believe
he could stand a maximum of 2 hours to 2-1/2 hours intermittently.
Regarding walking, I believe he could walk up to one mile at a
time.  Over an 8-hour day, he probably could walk at most 1-1/2
hour to 2 hours intermittently.  I believe he could bend
occasionally.  I believe he could lift up to 10 pounds frequently and
20 pounds occasionally.

(Id.)  The ALJ's finding of an RFC for a range of work at the sedentary exertional level with the

need for a sit-stand option every 30-45 minutes does not take into account Dr. Sturtz's opinion

concerning plaintiff's ability to sit for only two to three hours intermittently, stand for no more

than two to two and a half hours intermittently, and walk for only one and a half to two hours

intermittently during an eight-hour day.  With the limitations assessed by Dr. Sturtz, plaintiff's

work day at best would consist of three hours of sitting for no more than one hour at a time, two

and one-half hours of standing for 30 to 45 minutes at a time, and two hours of walking

intermittently without exceeding one mile at a time, for a total work day of seven and one-half

hours, if plaintiff were able to work while standing and walking.  Thus, the limitations found by

Dr. Sturtz in 2005 would preclude plaintiff from working a full eight hour day five days a week.

The undersigned finds that Dr. Barr's September 2004 opinion, which the ALJ

rejected, is not inconsistent with the opinions of Dr. Gorek in 2002, Dr. Barr in 2002, Dr. Momi

in 2003, and Dr. Sturtz in 2005.  That 2004 opinion was provided on a Social Security form titled

"Chronic Pain Residual Functional Capacity Questionnaire."  (Tr. at 244-49.)  There, Dr. Barr

indicated that he had been plaintiff's primary care physician for many years and that he sees him

several times a year.  He described plaintiff's prognosis as poor and cited the following positive

objective signs of plaintiff's chronic pain:  reduced range of motion, impaired sleep, positive

straight leg raising , tenderness, trigger points, and abnormal gait.  (Tr. at 244.)  He indicated that

plaintiff's impairments are consistent with his symptoms and functional limitations and that

plaintiff's experience of pain is sufficiently severe to interfere with his attention and

concentration "constantly," which is defined by the form itself as from two thirds up to the entire

workday.  (Tr. at 245.)  Dr. Barr checked boxes indicating that plaintiff can sit for less than two hours and stand/walk for less than two hours total in an eight-hour day, would need to include brief periods of walking approximately every twenty minutes during the day, would need a job that permits him to shift positions at will from sitting, standing, or walking, and would sometimes need to lie down for about twenty to thirty minutes at unpredictable intervals during his work day.  (Tr. at 246.)  He indicated that plaintiff's impairments are likely to produce good days and bad days and that plaintiff would likely be absent from work as a result of his impairments or the treatment of those impairments for, on the average, three days a month or more.  (Tr. at 247.)

The ALJ's primary reason for rejecting Dr. Barr's 2004 opinion was that it was "inordinately based on [plaintiff's] subjective complaints," which the ALJ found not credible, and the doctor was "acting more as an advocate for [plaintiff] rather than as an objective treating doctor.  (Tr. at 17.)  The ALJ failed to acknowledge that Dr. Barr cited positive objective signs of chronic pain, including reduced range of motion, impaired sleep, positive straight leg raising , tenderness, trigger points, and abnormal gait.  (Tr. at 244.)  Moreover, the purpose for which a report is obtained does not provide a legitimate basis for rejecting it.  See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.  While the Secretary may introduce evidence of actual improprieties, no such evidence exists here.");  Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996);  Reddick v. Chater, 157 F.3d 715, 726-27 (9th Cir. 1998).  Here, the ALJ did not introduce any evidence of impropriety with regard to Dr. Barr's subjective judgments.

**III.  Credibility**

It is well established that the determination of credibility is a function of the ALJ acting on behalf of the Commissioner.  Saelee, 94 F.3d at 522.  In general, an ALJ's assessment of credibility should be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Questions of credibility and resolution of conflicts in the testimony are usually deemed

16

functions solely of the Commissioner. <u>Morgan</u>, 169 F.3d at 599. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. <u>Fair v. Bowen</u>, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Nonetheless, an ALJ's decision to reject a claimant's subjective testimony regarding the severity of his symptoms must be supported by specific findings. <u>Morgan</u>, 169 F.3d 599; <u>Matthews v. Shalala</u>, 10 F.3d 678, 679 (9th Cir. 1993) (citing <u>Miller v. Heckler</u>, 770 F.2d 845, 848 (9th Cir. 1985)). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." <u>Morgan</u>, 169 F.3d at 599. The "clear and convincing" standard "is the most demanding required in Social Security cases." <u>Moore v. Comm'r of the Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002).

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because the symptoms, as opposed to the impairment, are unsupported by objective medical evidence. <u>Reddick</u>, 157 F.3d at 722; <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" <u>Light</u>, 119 F.3d at 792 (quoting <u>Smolen</u>, 80 F.3d at 1281). Although the ALJ may rely, in part, on his or her own observations, <u>Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir. 1989), the ALJ cannot substitute those observations for medical diagnosis, <u>Marcia v. Sullivan</u>, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

In this case, the ALJ found plaintiff's subjective complaints

> not fully credible to the extent that they are inconsistent with the medical evidence indicating the capacity to perform at least a range of work at the sedentary exertional level. First, I note a pattern of noncompliance with medical treatment and recommendations. Specifically, in February 2002, following back surgery, claimant repeatedly failed to follow-up on a chronic pain management referral. Exhibit B2F/40 [tr. at 197]. More recently, in December

2003, claimant was admonished for failing to use crutches and cane following right hip replacement surgery. Exhibit B8F/5 [tr. at 240]. Claimant has been treated principally with narcotic pain medication despite some evidence of past overuse and denial of refills. Exhibit B2f/26-29 [tr. at 183-86]. I find claimant's testimony regarding activities of daily living, although admittedly quite limited, not inconsistent with a range of sedentary work. Claimant testified that he can dress himself, make a sandwich, do laundry and light housework. Claimant testified that he can walk around the house but lies down every day for pain relief. In sum, I find claimant's subjective complaints to be somewhat exaggerated and credible only to the extent that they are consistent with the above RFC.

(Tr. at 17-18.)

The ALJ's conclusions are not supported by the record and fail to provide clear and convincing reasons for rejecting plaintiff's subjective complaints. First, the medical evidence does not indicate a capacity to perform a range of work at the sedentary exertional level. Therefore any inconsistency between plaintiff's subjective complaints and the ALJ's RFC findings is not a convincing reason for rejecting plaintiff's allegations as not fully credible. Second, the ALJ's assertion of a pattern of noncompliance with medical treatment and recommendations is not supported by the three instances cited by the ALJ. And third, the ALJ's assessment of plaintiff's daily activities is not based on a fair assessment of the record.

The ALJ based his assertion of a pattern of noncompliance on plaintiff's "repeated" failure to follow up on a chronic pain management referral, his failure to use "crutches and cane" following his right hip replacement surgery, and alleged evidence of past overuse of narcotic pain medication and denial of refills.

Exhibit B2F/40, cited by the ALJ as evidence of repeated failure to follow up on a chronic pain management referral, is a treatment record for April 19, 2002. (Tr. at 198.) This document does not contain any discernible reference to a pain management referral. The ALJ may have meant to cite pages 41 to 43 of Exhibit B2F: (1) a letter dated March 22, 2002 from the Chronic Pain Management Program to Dr. Barr advising him that the Program received his referral, tried to reach plaintiff without success, and were closing the referral; (2) a letter dated

March 22, 2002 from the Program to plaintiff advising him that they were discharging him from the Program because they had not heard from him, but also inviting him to contact the Program and informing him of class dates and times; and (3) a letter dated February 28, 2002 from the Program advising plaintiff that they had received a referral and tried to reach him, and informing him that he should contact the Program at any time if he is interested. (Tr. at 198-200.) It appears that Dr. Barr made a notation on the letter sent to him to "File in [patient's] chart." (Tr. at 198.) Nothing in these pages reveals a reason for plaintiff's failure to follow up on the referral. On the other hand, the record is filled with evidence of plaintiff's willingness and efforts to comply with medical treatment ranging from medication to surgery to acupuncture to swimming. The court notes that plaintiff failed to follow up on one referral to a program that was not free and offered classes in cities other than plaintiff's own. This instance cannot fairly be characterized as "repeated" noncompliance with medical treatment and recommendations.

For plaintiff's failure to use "crutches and cane" following right hip replacement surgery, the ALJ cites Exhibit B8F/5, a December 22, 2003 treatment note made by Dr. Lenson:

> Status post right total hip replacement. It has been about six weeks. He is using no ambulatory aids against medical advice.
>
> I recommended he be on crutches. He didn't want to use them. We talked about the use of a cane for six weeks. He said he would do that. I explained the reason why. Dental prophylaxis and followup p.r.n.

(Tr. at 240.) This record suggests that plaintiff agreed to use a cane after Dr. Lenson explained why he should do so if he would not use crutches. The ALJ has not cited any evidence that plaintiff failed to use a cane after December 22, 2003.

For evidence of overuse and denial of refills of narcotic pain medication, the ALJ cited Exhibit B2F/26-29. These pharmacy records reflect that on two occasions in December 2002 plaintiff sent electronic prescription refill requests for hydrocodone/acetaminophen too early. [Tr. at 183-86.] On December 2, 2002, the pharmacy notified plaintiff that his refill request was sent too soon but the pharmacy "will be glad to refill next week." (Tr. at 186.) On

December 17, 2002, plaintiff again sent his electronic refill request too soon and was advised to "resubmit 12/26." (Tr. at 183-84.) These two occasions do not establish a pattern of non-compliance with medical treatment and recommendations.

Finally, the ALJ found that plaintiff's testimony regarding activities of daily living, "although admittedly quite limited," was not inconsistent with a range of sedentary work. In support of this finding, the ALJ cited plaintiff's testimony that he can dress himself, make a sandwich, and do laundry and light housework. The ALJ also cited plaintiff's testimony that he can walk around the house, although he acknowledged plaintiff's testimony that he lies down every day for pain relief. The record reflects that plaintiff testified that he can get himself dressed "[b]ut it's hard," especially bending to put on his left shoe, so that he tends to stay in his slippers if he is not going out. (Tr. at 310-11.) He makes himself a sandwich or eats cereal or cold pizza during the day, and heats up something at night, but does not prepare meals. (Tr. at 311.) He does laundry when he needs to but does little housework because when he "does anything one day, then that means the next day, [he] can't really do anything" and has "a hard time just getting out of bed." (Tr. at 311-12.) Plaintiff finds it hard to use the computer because sitting for more than 30 to 45 minutes hurts his back. (Tr. at 313-14.) He shops for groceries at a store two blocks away and knows where to find the cereal and frozen pizza so that he does not have to walk around the entire store. (Tr. at 314.) He goes to the store and to doctor's offices but nowhere else. (Tr. at 314-15.) He does not do yard work. (Tr. at 316.)

Plaintiff's testimony reflects that his activities of daily living are indeed "quite limited," and those activities are not consistent with a range of sedentary work. Plaintiff's daily activities consist of getting dressed or partially dressed and making simple meals. Plaintiff does laundry and light housework only on an occasional basis and must rest the next day after performing such activities. These activities are not consistent with the level of activity required to work eight hours a day five days a week. Moreover, social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v.

<u>Barnhart</u>, 433 F.3d 683, 688 (9th Cir. 2005); <u>Vertigan</u>, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Plaintiff has presented medical evidence of underlying impairments, and the ALJ found those impairments to be severe. The ALJ may not discredit plaintiff's testimony as to the severity of his symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. Here , there is no affirmative evidence of malingering in the record. Therefore the ALJ's reasons for rejecting plaintiff's testimony about the severity of his symptoms must be clear and convincing. Although the ALJ's reasons for rejecting plaintiff's testimony are specific in this case, they do not rise to the level of clear and convincing.

The ALJ's reasons for finding plaintiff's subjective complaints less than fully credible and for rejecting Dr. Barr's September 2004 opinion in part on the ground that it was based on plaintiff's subjective complaints are not clear and convincing. The objective medical evidence demonstrates that plaintiff suffers from conditions that may reasonably be expected to cause severe symptoms of pain as well as substantial limitations on the ability to work. In the absence of specific, clear and convincing reasons for rejecting plaintiff's statements regarding the severity of his pain, the undersigned finds that the ALJ failed to properly credit plaintiff's statements as to the nature and extent of his pain and functional limitations.

## CONCLUSION

The undersigned finds that the ALJ's RFC determination is not supported by substantial evidence. The medical opinions discussed <u>supra</u> demonstrate that plaintiff does not have the residual functional capacity to perform full time work, and, absent clear and convincing reasons for rejecting plaintiff's subjective complaints, those complaints must be credited. If the medical opinions and plaintiff's subjective complaints are properly credited, the record

1  demonstrates that plaintiff should have been found disabled.

2          The decision whether to remand a case for additional evidence or to simply award

3  benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

4  1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit has stated that,

5  "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served

6  by further administrative proceedings, or where the record has been thoroughly developed."

7  Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396,

8  1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.

9  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304;

10  Varney, 859 F.2d at 1401.

11          The record in this case was adequately developed and establishes that plaintiff is

12  disabled.  This matter should therefore be remanded with the direction to grant benefits.  See

13  Moore, 278 F.3d at 925 (remanding for payment of benefits where the ALJ improperly rejected

14  the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding

15  benefits where the ALJ "improperly discounted the opinion of the treating physician").

16          Accordingly, IT IS ORDERED that:

17          1.  Plaintiff's March 13, 2007 motion for summary judgment or remand (Doc. No.

18  17) is granted;

19          2.  Defendant's April 12, 2007 cross-motion for summary judgment (Doc. No. 18)

20  is denied;

21          3.  The decision of the Commissioner is reversed; and

22          4.  This matter is remanded with the direction to grant benefits.

23  DATED: April 3, 2009.

24

25                                                    _____

DAD:kw                                       DALE A. DROZD
26  Ddad1/orders.socsec/smith2373.order          UNITED STATES MAGISTRATE JUDGE